**STATE OF MAINE, et al., Plaintiffs,**

v.

**Lee M. THOMAS, Administrator United States Environmental Protection Agency, Defendant.**

**Civ. No. 87–0204–P.**

United States District Court,
D. Maine.

July 27, 1988.

James E. Tierney, Gregory W. Sample, Asst. Atty. Gen., Office of Atty. Gen., Augusta, Me., Jeffrey L. Amestoy, J. Wallace

Malley, Office of Atty. Gen., Montpelier, Vt., Robert Abrams, David R. Wooley, Michael Moore, Office of Atty. Gen., Albany, N.Y., James M. Shannon, Janet McCabe, Office of the Atty. Gen., Boston, Mass., W. Cary Edwards, Paul Schneider, Office of Atty. Gen., Trenton, N.J., Joseph Lieberman, Brian Comerford, Office of Atty. Gen., Hartford, Conn., Thomas C. Newman, Portland, Me., James E. O'Neil, Gary Powers, Office of Atty. Gen., Providence, R.I., Howard I. Fox, Sierra Club Legal Defense, Washington, D.C., Michael Herz, Environmental Defense Fund, New York City, Armond Cohen, Conservation Law Foundation of New England, Boston, Mass., for plaintiffs.

John A. Amodeo, U.S. Dept. of Justice, Environmental Defense Section, Washington, D.C., Gregory B. Foote, Office of Gen. Counsel, U.S. EPA, Washington, D.C., Pamela Hill, U.S. EPA, Boston, Mass., David R. Collins, Asst. U.S. Atty., Portland, Me., for defendant.

GENE CARTER, District Judge.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S AND DEFENDANT–INTERVENORS' MOTION TO DISMISS

Seven Northeastern states and six environmental groups [1] have brought an action for declaratory judgment and injunctive relief which requests the court to compel the Environmental Protection Agency (EPA) to promulgate additional air pollution regulations for the protection of visibility in federal parks and wilderness areas. Pursuant to this court's order granting the defendant's motion to bifurcate, the legal issues

of liability and appropriate standards for any rulemaking schedule will be decided first; if the defendant is found liable, the court will then, in the second stage of the proceeding, make factual determinations regarding the proper remedy. Before the court now are the plaintiffs' motion for summary judgment and the defendant's and the defendant-intervenors' [2] (Utilities) motion to dismiss or for summary judgment.

This action arises under § 169A of the Clean Air Act which is entitled "Visibility Protection of Federal Class I Areas," [3] and which sets forth as a national goal "the prevention of any future, and the remedying of any existing, impairment of visibility in mandatory class I Federal areas which impairment results from manmade air pollution." 42 U.S.C. § 7491(a)(1).[4] The statute requires that:

> Not later than twenty-four months after August 7, 1977, and after notice and public hearing, the Administrator shall promulgate regulations to assure (A) reasonable progress toward meeting the national goal specified in paragraph (1) and (B) compliance with the requirements of this section....
>
> In determining reasonable progress there shall be taken into consideration the costs of compliance, the time necessary for compliance, and the energy and no-air environmental impacts of compliance, and the remaining useful life of any existing source subject to such requirements.

42 U.S.C. § 7491(a)(4), (g)(1). The Clean Air Act provides that any citizen may bring a civil action in federal district court "against the Administrator where there is

1. The plaintiffs include all the New England states except New Hampshire, New York, New Jersey, the Sierra Club, the Natural Resources Council, the Environmental Defense Fund, the Conservation Law Foundation of New England, the National Audubon Society, and, by permissive intervention, the National Parks and Conservation Association.

2. Defendant-intervenors include 64 individual electric utility companies, the Edison Electric Institute, the American Public Power Association, and the National Rural Electric Coopera-

tive Association, all members of the Utility Air Regulatory Group.

3. Class I federal areas include international parks, national wilderness areas which exceed 5,000 acres, national memorial parks which exceed 5,000 acres, and national parks which exceed 6,000 acres. 42 U.S.C. § 7472(a).

4. Subsequent references to § 169A will employ the United States Code designation, 42 U.S.C. § 7491 *et seq.* All statutory references will be to Title 42 unless otherwise indicated.

alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," § 7604(a)(2); for purposes of § 7604, "the meeting of the national goal specified in [§ 7491(a)(1), *supra*] by any specific date or dates shall not be considered a 'nondiscretionary duty' of the Administrator." § 7491(f). A petition for review of "any final action taken by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia." § 7607(b), (e).

In December, 1980,[5] pursuant to § 7491(a)(4) and in an action entitled "Final Rulemaking," the EPA promulgated regulations "to assure reasonable progress" toward the § 7491(a)(1) national goal. *See* 45 Fed.Reg. 80,084. In these regulations, the EPA recognized two types of air pollution which impair visibility, plume blight and regional haze,[6] and adopted a phased approach to the prevention and remedying of such pollution. The regulations themselves (Phase I) address only "impairment that can be traced to a single existing stationary facility or small group of existing stationary facilities," while specifically reserving for future phases "more complex problems such as regional haze and urban plumes.... when improvement in monitoring techniques provides more data on source-specified levels of visibility impairment, regional scale models become refined, and ... scientific knowledge about the relationships between emitted air pollutants and visibility impairment improves."

45 Fed.Reg. 80,086.[7] The EPA explicitly declined to adopt a schedule or deadline for any subsequent phase. Defendant's Exhibit L, *Summary of Comments and Responses.*

In their complaint, the plaintiffs allege that under § 7491(a)(4) the EPA had a nondiscretionary duty to issue regulations "to achieve the visibility goal"[8] by August 7, 1979, Complaint ¶ 16; that the December, 1980 Phase I regulations are not "a full response to that nondiscretionary directive," Complaint ¶ 17; that the EPA's eight-year failure to implement subsequent phases is also a failure to perform a § 7491(a)(4) nondiscretionary duty, Complaint ¶ 18; and that this failure

> subjects plaintiffs to [certain] visibility impairment impacts ... and further harms plaintiffs by depriving them of (a) the statutory benefits conferred by 42 U.S.C. § 7491, (b) in the case of plaintiff states, the ability to devise effective visibility protection programs to address impairment in Mandatory Class I Areas, (c) the right to be protected by the federal visibility enforcement efforts of the Environmental Protection Agency, and (d) the right to bring plaintiffs' own visibility enforcement actions pursuant to 42 U.S. C. § 7604.

Complaint ¶ 12. The plaintiffs request summary judgment based on the court's declaration that the EPA had a nondiscretionary duty to issue complete visibility impairment regulations, including regional haze regulations, by August 7, 1979.

---

5. This is almost a year and a half after the August, 1979 deadline established in 42 U.S.C. § 7491(a)(4). The issuance of these regulations followed a settlement agreement and consent decree issued by the District of Columbia District Court in a § 7604 citizen suit, *Friends of the Earth v. Costle,* No. 79–2311 (D.D.C.1979), Defendant's Exhibits B and C.

6. The EPA defines plume blight as "[s]moke dust, colored gas plumes, or layered haze emitted from stacks which obscure the sky or horizon and are relatable to a single source or a small group of sources," and regional haze as "widespread, regionally homogeneous haze from a multitude of sources which impairs visibility in every direction over a large area." 45 Fed.Reg. 80,085.

7. According to the EPA's subsequent interpretation, these regulations concern only aspects of plume blight and do not address regional haze pollution sources. *See* 49 Fed.Reg. 48,154 (Dec. 10, 1984), 52 Fed.Reg. 26,974 (July 17, 1987), and 52 Fed.Reg. 45,132 (Nov. 24, 1987).

8. The plaintiffs have requested that ¶ 14 of their Proposed Declaratory Relief be amended to insert the term "reasonable progress," thus recognizing that there was no duty to actually *achieve* the national goal by any specific date. Plaintiffs' Reply Memorandum p. 8 n. 4. The court grants this request.

The defendant and the defendant-intervenors have moved to dismiss the complaint based on lack of subject matter jurisdiction under § 7604, arguing that § 7491 does not require the EPA to regulate specific kinds of air pollution but only to issue regulations which assure "reasonable progress" toward the national visibility protection goals, a requirement fulfilled by the Phase I regulations. Both the EPA and the Utilities have also moved for summary judgment based either on collateral estoppel, arguing that the claim is actually a challenge to the 1980 regulations, or on *res judicata* grounds, arguing that this claim and these plaintiffs are virtually identical to an earlier claim brought by another environmental group, Friends of the Earth, and settled by consent decree, *see* n. 5, *supra.*

The court first addresses the jurisdictional issue since it is potentially dispositive of all other issues and motions. When a party challenges the actual existence of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), as opposed to a challenge to the facial sufficiency of the complaint, the burden of proving jurisdiction is on the pleader. *Gibbs v. Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); *Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977); Wright & Miller, *Federal Practice and Procedure* § 1350 (1969). In such a case, the court does not draw inferences favorably to the pleader but should consider any material outside the pleadings submitted by the pleader and the movant.[9] *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Cloutier v. Town of Epping,* 547 F.Supp. 1232, 1239 (D.N.H.1982); Wright and Miller, *supra.* When a claim is brought under a specific federal statute, rather than under the general federal question statute, the court must determine whether the pleader has met the jurisdictional requirements of that statute. Wright & Miller, *supra,* § 1210.

Here, the plaintiffs rely[10] on 42 U.S.C. § 7604, which requires that a Clean Air Act civil suit brought in federal district court allege "a failure of the Administrator to perform any act or duty which is not discretionary with the Administrator." Thus the plaintiffs must first show that their claim is not a petition for review of "any final action taken by the Administrator" properly brought under § 7607, and then must show that promulgation of the requested additional regulations is nondiscretionary, or mandatory, under § 7491.

The plaintiffs concede that the Administrator had no mandatory duty to issue regulations which *achieved* the § 7491(a)(1) national goal by *any* date. § 7491(f).[11] It is clear that the Administrator's only mandatory duty was the timely issuance of regulations which "assure reasonable progress" toward that goal. § 7491(a)(4).[12] The parties agree that in December, 1980, the Administrator did issue some plume blight regulations and adopted a phased approach with no deadline as to other types of air pollution. The issues thus are whether the Administrator's deferral of additional regulations was a "final action," and if not, whether the term "reasonable progress" is intended to measure the adequacy of the Administrator's Phase I regulations in the context of a § 7604 action. Determination of the finality of an action is important because the 1977 Clean Air Act amendments to § 7607 expanded appellate court

---

9. Consideration of such extra-pleading material does *not* convert a 12(b)(1) motion to dismiss for lack of actual subject matter jurisdiction into a Rule 56 motion for summary judgment. *Wright & Miller, supra,* §§ 1363, 1364.

10. Although the plaintiffs originally asserted jurisdiction under 28 U.S.C. § 1331 and § 1361, Complaint ¶ 2, they have chosen to rely entirely on 42 U.S.C. § 7604 as a jurisdictional basis. *See* Plaintiffs' Reply Memorandum pp. 9–10. The court therefore does not test jurisdiction under Title 28.

11. *See* n. 8, *supra.*

12. The defendant concedes that it had a mandatory duty to issue regulations by August 7, 1979. *See* Defendant's Memorandum in Support of Motion to Dismiss pp. 11–12. *See also Sierra Club v. Thomas,* 828 F.2d 783, 791 (D.C.Cir. 1987) (a nondiscretionary duty exists when a statute " 'categorically mandates' all specified action to be taken by a date-certain deadline," citing *Natural Resources Defense Council v. Train,* 510 F.2d 692 (D.C.Cir.1974).

review to include "any ... final action of the Administrator," § 7607(b)(1); judicial review of final regulations or orders of the Administrator rests exclusively with the appellate court under § 7607(e). Thus, if jurisdiction exists under § 7607, it cannot be asserted under § 7604. *Environmental Defense Fund v. Costle,* 448 F.Supp. 89, 93 (D.D.C.1978).

When an EPA inaction or deferral of action is accompanied by approval of certain other regulations, such that " 'issues of inaction and approval are entwined,' " the appellate court has jurisdiction over both the deferral and the approval as a final action, so long as both are based on an administrative record. *Abramowitz v. United States Environmental Protection Agency,* 832 F.2d 1071, 1076 (9th Cir.1987), citing *Indiana & Michigan Electric Co. v. United States Environmental Protection Agency,* 733 F.2d 489, 490 (7th Cir.1984).[13]

The question here, however, is whether inaction or deferral, standing alone, is ever a § 7607 final action. In *Bethlehem Steel Corp. v. United States Environmental Protection Agency,* 782 F.2d 645 (7th Cir. 1986), an environmental citizens group petitioned the appellate court seeking an order to compel additional rulemaking regarding coke emissions. The citizens group did not challenge the EPA's approval of a state implementation plan but requested that the plan be treated as an interim measure to be superseded by the additional regulations once promulgated.[14] The Seventh Circuit declined to find jurisdiction, determining that an order to compel the EPA to issue additional regulations in that case could come only from the district court under § 7604.

This is especially clear since we could not review the EPA's determination not to go the route urged by the citizens group on the basis of the administrative record before us, which contains nothing on the feasibility of the EPA's conducting the type of proceeding urged by the group, either within the next six months or within any other period. If this is a matter reviewable at all, it will require the compilation of a new administrative record that will disclose the reasons for and against a finding that a new rulemaking proceeding would be a feasible and fruitful undertaking.... True, it would not be proper for even the district court to take evidence designed to lay a factual basis for (or against) the agency's action. See *Florida Power & Light Co. v. Lorion,* [470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) ]. But if, because of the highly informal nature of that action (a refusal to conduct a rulemaking proceeding), the agency's reasons for the action are not disclosed, then a district court has the authority, and (as we do not) the practical ability, to compile a record limited to reconstructing, as distinct from supporting or refuting, the agency's reasoning process.

*Bethlehem Steel,* at 656. The court concluded that since the citizens group sought a new proceeding distinct from that which was under review, it stated a claim, if any, under § 7604. The discretionary or nondiscretionary nature of the EPA's duty to comply with the request for a new proceeding was not a factor in the Seventh Circuit's finding that it did not have jurisdiction.[15]

13. In *Indiana and Michigan Electric Co., supra,* a utility company challenged the EPA's deferral on certain implementation procedures submitted as part of a state implementation plan, which the EPA had approved in part. In *Abramowitz, supra,* the EPA had resisted § 7607 jurisdiction over a deferral of action regarding air quality attainment provisions which was part of an approval of certain other state air pollution control measures.

14. In *Bethlehem Steel,* both the EPA and the environmental citizens group recognized the EPA's state implementation plan approval as a final order; the environmental group had not

argued that inaction is final action but that the remedy proposed to cure alleged deficiencies in that approval (*i.e.,* the promulgation of *additional* regulations) should be granted by the appellate court, which clearly had jurisdiction to review the approval under § 7607.

15. *See also Environmental Defense Fund v. Costle,* 448 F.Supp. 89 (D.D.C.1978). In that case an environmental group challenged the EPA's decision to defer implementation of certain 1977 Clean Air Act amendments. Finding that the broad scope of appellate jurisdiction under § 7607 operated to restrict § 7604 jurisdiction

These decisions indicate that once the EPA has publicly announced a formal decision not to act or to defer action, and the basis for that decision is set forth in an administrative record, such inaction or deferral of action becomes a final action for purposes of review under § 7607. This conclusion reflects the long-recognized record-generating function of the district court and the trend which has channeled review of all EPA decisions to the Court of Appeals for a centralized and definitive decision. *See Harrison v. PPG Industries,* 446 U.S. 578, 590, 100 S.Ct. 1889, 1896, 64 L.Ed.2d 525 (1980).

In this case, the plaintiffs insist that their claim in no way challenges the Phase I regulations nor the adoption of a phased approach,[16] but seeks instead *additional* regulations in fulfillment of § 7491's mandatory directive that such regulations "assure reasonable progress" towards the national goal. The plaintiffs further argue that, by its very terms, Phase I could not constitute a "final action" since it specifically set forth the EPA's intention to promulgate additional regulations at some future time; thus § 7607 review would have been unavailable. The court concludes, however, that the EPA's deferral of action on additional air quality standards, including regional haze regulations, was a final action and thus reviewable only under § 7607.

First, it is difficult to see how any court could determine that "additional" regulations are required under § 7491 without also determining that the Phase I regulations were not "a full response to [the § 7491(a)(4)] nondiscretionary directive," Complaint ¶ 17. The common meaning of the word "additional" implies a necessary evaluation of the adequacy of final regulations already promulgated; such substantive review of final regulations is available only under § 7607. Although the plaintiffs insist that their claim is not a challenge to the Phase I regulations, the court is not bound by this characterization. It is reasonable to conclude that in this case, "the issues of inaction and action are entwined," *Indiana & Michigan, supra,* at 490; *Abramowitz, supra,* at 1076,[17] and that, therefore, the promulgation of the 1980 plume blight regulations, together with the deferral of further regulations, constituted a single "final action"[18] under § 7607.

Second, even if the court could sever the request to compel additional regulations from the question of the adequacy of the Phase I plume blight regulations, it is clear that the EPA's deferral was a final action and therefore reviewable only under § 7607.[19] This case falls squarely within the guidelines in *Bethlehem Steel, supra,* which recognized that inaction or deferral, *if based on an administrative record,* can trigger § 7607 jurisdiction. Here, the EPA's failure to promulgate regional haze regulations was based on an extensive and published administrative record which reflects citizen and agency concerns, the in-

---

to citizen challenges to "the Administrator's nonfinal or informal refusal to perform a mandatory duty," and that a public announcement in the Federal Register of the Administrator's decision to defer constituted "final action," the court concluded that review of that deferral rested exclusively in the appellate court.

16. According to the first exchange of memoranda, it appeared that the plaintiffs were challenging either the substance of the 1980 regulations or the adoption of a phased approach. *See* Plaintiffs' Memorandum in Support of Motion for Summary Judgment pp. 22–23. In their reply memorandum, however, the plaintiffs state that they are not challenging the 1980 EPA regulations. *See* Reply Memorandum p. 11.

17. The fact that neither *Indiana* nor *Abramowitz* involved the specific Clean Air Act provision in question here is not material. Section 7607(b)

authorizes review not only of final actions regarding state implementation plans, but of "any [other] final action."

18. The court recognizes that although it strains common sense to interpret the Phase I regulations, which explicitly announce the intent to implement further phases, as the EPA's "final" step in the fulfillment of its nondiscretionary duty, the term "final action" must be tested as it relates to ripeness for review.

19. Although the 60–day time period following final agency action within which the plaintiffs could have brought a § 7607 request for review has long since passed, the plaintiff could still petition the Administrator for rulemaking under 5 U.S.C. § 553(e).

tent to defer, and a rationale based on inadequate technological and scientific information. A district court thus has no function to serve at this stage of the proceedings.

Given the conclusion that the EPA's indefinite deferral of its regional haze rulemaking responsibilities was a final agency action, and therefore reviewable only under § 7607, the court need not reach the interpretation of the "reasonable progress" language. The court notes, however, that it is improper "for even the district court to take evidence designed to lay a factual basis for (or against) the agency's action"; a district court only has "the authority ... to compile a record limited to reconstructing, as distinct from supporting or refuting, the agency's reasoning process." *Bethlehem Steel, supra,* at 656. Here, the 1980 plume blight regulations provide an explicit rationale for the decision to defer— inadequacy of monitoring techniques and regional scale models, and lack of scientific knowledge. Thus the requirement that visibility impairment regulations must assure "reasonable progress" toward the national goal can not be used as a test of the statutory adequacy of regulations in the § 7604 context.[20]

The court concludes, therefore, that the EPA's failure to promulgate additional air pollution regulations, including regional haze regulations, was a "final action" within the meaning of § 7607, despite the EPA's expression of intent regarding future action. Thus review of that failure should have been sought under § 7607 and not under § 7604. It follows that this court does not have subject matter jurisdiction over the plaintiffs' claim.

Accordingly, the court GRANTS the defendant's and the defendant-intervenors' motions to dismiss under Fed.R.Civ.P. 12(b)(1), and does not reach the cross-motions for summary judgment.

---

20. A very recent decision from the Second Circuit underscores the plaintiffs' difficulties on the substantive issues in this case. In *State of Vermont v. Thomas,* 850 F.2d 99 (2nd Cir.1988), the State of Vermont, together with two environmental groups, requested review under § 7607 of an EPA final rule which took no action on Vermont's state implementation plan proposal regarding federally enforceable strategies for controlling regional haze. The court determined that these proposed regulations fell outside the scope of the 1980 regulations and that, therefore, the EPA's "no action" response was reasonable and within agency discretion.