**ENVIRONMENTAL DEFENSE
FUND, INC., Plaintiff,**

**Natural Resources Council of
Maine, Intervenor,**

**v.**

**Douglas M. COSTLE, Administrator, U.S.
Environmental Protection
Agency, Defendant,**

**Alabama Power Company et
al., Intervenors.**

**Civ. A. No. 78–281.**

**United States District Court,
District of Columbia.**

**March 15, 1978.**

Robert J. Rauch, Bernard A. Gould, Washington, D.C., for plaintiff, Environmental Defense Fund, Inc.

Earl Salo, Peter H. Wyckoff, for defendant, U.S. Environmental Protection Agency.

Edward Lee Rogers, New York City, for plaintiff intervenor, Natural Resources Council of Maine.

George C. Freeman, Jr., Henry V. Nickel, Michael B. Barr, Hunton & Williams, Washington, D.C., for Alabama Power Co. et al.

Francis M. Shea, James R. Bieke, William R. Galeota, Shea & Gardner, Washington, D.C., for The Montana Power Co. et al.

Donald W. Markham, Jonathan B. Hill, Markham & Hill, Washington, D.C., for The Pittston Co. of New York.

John J. Adams, David F. Peters, Hunton & Williams, Richmond, Va., for American Petroleum Institute et al.

Eugene B. Thomas, Jr., Michael F. McBride, Margaret R. A. Paradis, LeBoeuf, Lamb, Leiby & MacRae, Washington, D.C., for Niagara Mohawk Power Corp.

Charles F. Lettow, Henry J. Plog, Jr., O. Ann Horn, Cleary, Gottlieb, Steen & Hamilton, Washington, D.C., George P. Cheney, Jr., Pittsburgh, Pa., for PPG Industries, Inc.

Fred F. Fielding, Thomas C. Watson, James Skelly Wright, Jr., Morgan, Lewis & Bockius, Washington, D.C., for Sierra Pacific Power Co.

## MEMORANDUM OPINION

PARKER, District Judge:

The Environmental Defense Fund, Inc. (EDF), a nonprofit corporation concerned with the preservation and improvement of the environment, brings this action to challenge the decision of Douglas M. Costle, Administrator of the Environmental Protection Agency (EPA), to defer implementation of § 165(a) of the 1977 Amendments to the Clean Air Act [1] (Act) beyond August 7, 1977, the date of its enactment. This section is one of several new provisions aimed at prevention of significant deterio-

ration (PSD) of air quality in clean air areas of the country and provides that "[n]o major emitting facility on which construction is commenced after the date of the enactment of this part" may be constructed unless a permit has been issued pursuant to several requirements. Facing a conflict between the language of § 165 and other sections of the 1977 Amendments, the Administrator decided not to apply that section to facilities which obtained PSD permits under existing EPA regulations before March 1, 1978.

The plaintiff claims that Administrator Costle has a nondiscretionary obligation to implement § 165 promptly, which he has failed to perform. The EDF brings this citizen suit under § 304(a)(2) of the Act,[2] seeking declaratory and injunctive relief enforcing § 165 as of August 7, 1977. Before the Court is EDF's motion for preliminary injunction to prevent issuance of permits to facilities not in compliance with the section and to stay construction by any party holding a PSD permit issued since August 7, 1977.[3]

In opposing the motion for preliminary injunction, the Administrator has been joined by several defendant intervenors, including electric utilities and other companies engaged in the development and production of energy resources.[4] Generally, they have applied for or have received PSD permits under existing EPA regulations since August 7, 1977, or would be otherwise affected if § 165 were to be applied retroactively to August 7. They have moved to dismiss the complaint for lack of subject matter jurisdiction, alleging that under § 307(b)(1),[5] review of the Administrator's decision here rests exclusively in the United

---

1. 42 U.S.C. § 7401 et seq., as amended by the Clean Air Act Amendments of 1977, Pub.L. No. 95–95 (Aug. 7, 1977). Section 165(a) is found at 42 U.S.C. § 7475.

2. 42 U.S.C. § 7604(a)(2).

3. The Court did not grant EDF's application for a temporary restraining order because the parties agreed that, pending resolution of the motion for preliminary injunction, EPA would process, but not issue, PSD permits. See Order

entered February 24, 1978, as extended by Order of March 10, 1978.

4. The defendant intervenors are: Alabama Power Co., et al.; American Petroleum Inst., et al.; Montana Power Co., et al.; Niagara Mohawk Power Corp.; Pittston Co. of New York; PPG Indus., Inc.; and Sierra Pacific Power Co.

   Natural Resources Council of Maine has been granted leave to intervene as a plaintiff.

5. 42 U.S.C. § 7607(b)(1).

States Court of Appeals for the District of Columbia. Other intervenors seek dismissal of the complaint for failure to state a cause of action.

The Court has considered the legal memoranda, exhibits, affidavits and argument of counsel and concludes that the Court of Appeals has exclusive jurisdiction of the issues raised here and that the Administrator had discretion to determine when to implement § 165. Accordingly, the complaint must be dismissed for lack of subject matter jurisdiction.

### Background

Prior to enactment of the 1977 Amendments, EPA regulations governed PSD program requirements for state implementation plans. 40 C.F.R. § 52.21. New sections 160–169A of the Act follow the basic outline of the regulations by dividing clean air areas into classes, setting allowable increments for various pollutants, and providing for the reclassification of areas. The new sections are, however, more stringent than the regulations in several respects.

To ease the transition, § 168,[6] entitled "Period Before Plan Approval," provides that until state plans are revised to meet new standards, "applicable regulations . . . shall remain in effect" with three exceptions specified in subsection (b). These exceptions called for immediate amendments to regulations to satisfy the requirements of § 162(a) (classification of parks and wilderness areas as Class I); § 163(b) (allowable increments of sulfur dioxide and particulate matter); and § 164(a) (prohibition of reclassification of certain areas to Class III).

Section 165 is conspicuously absent from the list of immediate changes in § 168(b). However, the language of § 165 calls for immediate implementation, providing in relevant part that:

**6.** 42 U.S.C. § 7478.

**7.** In addition to the two notices of rulemaking discussed in text, the Administrator also proposed regulations to guide the states in revising their implementation plans to incorporate other new PSD requirements. 42 Fed.Reg. 57471.

[n]o major emitting facility on which construction is commenced *after the date of the enactment of this part* may be constructed in any area to which this part applies unless—

(1) a permit has been issued . . . in accordance with this part . . .

(2) . . . the required analysis has been conducted in accordance with regulations promulgated by the Administrator, and a public hearing has been held

. . .

. . . . .

(4) the proposed facility is subject to the best available control technology for each pollutant subject to regulation under this act . . . . (emphasis added)

To clarify the apparent ambiguity created by the interplay of § 168 and § 165, the Administrator requested a technical amendment from Congress. Meanwhile, in a memorandum dated October 6, 1977, EPA ordered its Regional Administrators to apply § 165 retroactively to August 7. On October 27, 1977, noting that a technical amendment was not forthcoming, the Administrator instructed the Regions not to apply § 165 until March 1, 1978.

On November 3, 1977, the Administrator published interrelated rulemaking notices in the Federal Register.[7] First, as required by § 168, he promulgated final amendments to the EPA PSD regulations and, effectively, to the state plans themselves, implementing §§ 162(a), 163(b) and 164(a) as of August 7. 42 Fed.Reg. 57459. Second, he issued proposed rules amending EPA regulations to incorporate the new preconstruction review procedures of § 165. 42 Fed.Reg. 57479. In the "Supplementary Information" or preamble section of the proposed regulations, he presented the following decision:

EPA has chosen not to make Section 165 effective immediately upon enactment

Under § 406(d)(2) of the 1977 Amendments, states are given until the later of one year from August 7, 1977, or nine months after the promulgation of any necessary regulations by EPA to amend their implementation plans, unless otherwise provided.

because it is not one of the Sections specified in Section 168 (see introductory discussion in today's Federal Register notice making immediately effective changes to 40 C.F.R. 52.21). There is a substantial legal argument, however, that Section 165(a) was intended to be immediately effective because it applies by its terms to sources which commence construction "after the date of enactment" of the 1977 Amendments. In light of the drafting inconsistencies between Sections 165(a) and 168, EPA feels that the most prudent course is to implement Section 165(a) as quickly as possible, but through the rule-making process.

Estimating that promulgation of guiding regulations would take four months,[8] the Administrator announced that § 165 would apply to any new source which had not obtained a PSD permit before March 1, 1978, and had not commenced construction before December 1, 1978, the date revised state implementation plans would be due.[9]

The Environmental Defense Fund objected to the decision to defer application of § 165 in communications to EPA dated November 2, 1977, and February 2, 1978. Obtaining no response, this complaint was filed on February 17, 1978.

### Legal Analysis

The plaintiff alleges that this Court has jurisdiction[10] of this citizens suit under § 304(a)(2) of the Clean Air Act, which authorizes any person to commence a civil action on his own behalf in a district court

> against the Administrator where there is alleged a failure . . . to perform any act or duty under this act which is not discretionary with the Administrator.

There are two prerequisites for jurisdiction under this section. First, the Court must find that the Court of Appeals for the District of Columbia does not have jurisdiction under § 307(b)(1) to review the Administrator's decision to defer application of § 165, since such jurisdiction is exclusive. Second, this decision must have constituted a refusal to perform a nondiscretionary duty imposed by § 165.

### Final Action under § 307(b)(1)

Section 307(b)(1) of the Clean Air Act provides that a petition for review of, among other things, any "nationally applicable regulations promulgated, or final action taken, by the Administrator" may be filed only in the D.C. Circuit. Prior to the 1977 addition of the words "final action," the question had arisen whether there could be concurrent jurisdiction in the court of appeals and the district court when the Administrator had acted, though allegedly not far enough, in a way which also constituted a refusal to perform a mandatory duty. *See, e. g., National Resources Defense Council v. EPA,* 168 U.S.App.D.C. 111, 116–117, 512 F.2d 1351, 1356–57 (1975); *Oljato Chapter of Navajo Tribe v. Train,* 169 U.S.App.D.C. 195, 202, 515 F.2d 654, 661 n. 9 (1975). In *Oljato,* Judge J. Skelly Wright indicated that such a case might be heard either under § 307 or § 304.

Congress amended § 307 in two ways to broaden and clarify the exclusive jurisdiction of the court of appeals. First, § 307(b)(1) was expanded to cover any "final action," a category broader than administrative rules and orders. Second, § 307(e) was added to provide that

> [n]othing in this Act shall be construed to authorize judicial review of regulations or orders of the Administrator under this Act, except as provided in this section.

These changes follow the trend of judicial decisions which have channeled review of any formal decision of the Administrator to

---

**8.** This date has been moved up several weeks due to an extension of the time for public comments from January 3 to January 31, 1978.

**9.** *See* note 7 *supra.*

**10.** EDF also alleged district court jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under 28 U.S.C. § 1331. The Procedure Act provides no independent basis of jurisdiction. *See Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Nor does § 1331 support jurisdiction, since the Clean Air Act provides its own review procedures. *Id.*

the court of appeals for a centralized and definitive decision. *See, e. g., Lubrizol Corp. v. Train,* 547 F.2d 310 (6th Cir. 1976); *Sierra Club v. EPA,* 176 U.S.App.D.C. 335, 540 F.2d 1114 (1976); Order, *Sierra Club v. Ruckelshaus,* Civ. No. 1031–72 (D.D.C. Nov. 15, 1974). Only recently, Judge Joseph C. Waddy of this Court, in a final order of dismissal, recognized that the new § 307(b)(1) places review of any nationally applicable and discretionary final action of the Administrator exclusively in our Circuit Court, *Sierra Club v. Train,* Civ. No. 76–656 (D.D.C. Jan. 19, 1978). Facing the facts of this case, the Court now finds that it lacks jurisdiction as well to review any nondiscretionary final action of the Administrator. Contrary to EDF's assertions, this interpretation does not make § 304(b) meaningless, since citizens may still challenge the Administrator's nonfinal or informal refusal to perform a mandatory duty.

The interrelated announcements of the Administrator in the November 3, 1977, Federal Register mark his final decision not to implement § 165 as of August 7, 1977. The final regulations under § 168 demonstrate implicitly that he was not going to apply § 165 immediately. Any doubts were resolved by the cross-reference to the proposed regulations, where in the preamble the Administrator clearly states and explains his decision to defer application until March 1, 1978. The fact that the decision appeared, in part, in the final regulations does not make the decision the equivalent of a final regulation; the Court is not here placing form over substance. Nor does the Court condone the Administrator's decision to place the notice of his final action in the preamble to proposed regulations.[11] The crucial point is that, though the amendments to EPA preconstruction review regulations under § 165 were merely proposed, the Administrator had taken a final action as to the issue of whether § 165 was to be immediately effective. As such, review of this action rests exclusively in the jurisdiction of the Court of Appeals of this Circuit under § 307(b)(1).[12]

The case of *Sierra Club v. Ruckelshaus,*[13] relied upon by EDF to support § 304 jurisdiction, is not inconsistent with this holding. In that case, the district court assumed jurisdiction over a citizen suit challenging the "declination" of the Administrator to assert his authority to require PSD regulations in state implementation plans. He had evidenced this declination, first, by testifying before Congress that he believed he lacked such authority and, second, by promulgating a federal regulation which allowed degradation of clean air areas. EDF considers the situation in this action to be exactly analogous, since Administrator Costle has, first, announced his refusal to comply with § 165 in memoranda and the preamble to proposed regulations and, second, promulgated regulations falling short of his statutory duties. The Court agrees with the defendants in distinguishing that decision. Whether the case would have been controlling before the 1977 amendment to § 307(b)(1) or not, the Administrator has here taken a final action reviewable only in the court of appeals.

---

**11.** While the Court has determined that these interrelated notices adequately notified the public of final action deferring the effective date of § 165, the better practice would be for the Administrator to state specifically that such an action is final for purposes of review. The Court does not reach the issue whether in future cases, especially where the notice is more ambiguous than that presented here, such a procedure may be required before a finding of final agency action can be made.

**12.** Three related cases have been filed this year: Citizens to Preserve Spencer County, No. 78–1002; Alabama Power Co. v. Costle, No. 78–1006; American Petroleum Inst. v. Costle, No. 78–1008. EDF has moved to intervene in each case. Leave has been granted in Spencer County and the government has moved to dismiss on the ground that petitioners originally failed to challenge the final PSD regulations and an amendment after the § 307 60-day period cannot cure the defect. This motion appears to be inconsistent with the position taken by the Administrator here, insofar as he suggests that the interrelated rulemaking notices together demonstrate his final decision not to implement § 165 retroactive to August 7, 1977.

**13.** 344 F.Supp. 253 (D.D.C.), *aff'd,* 4 E.R.C. 1815 (D.C. Cir. 1972), *aff'd by an equally divided Court,* 412 U.S. 541, 93 S.Ct. 2770, 37 L.Ed.2d 140 (1973).

### Discretion of the Administrator

Running parallel to the question of finality of administrative action under § 307(b)(1) is the issue of whether the Administrator has discretion for § 304(a)(2) purposes. EDF argues that the "upon enactment" language of § 165 clearly imposes a nondiscretionary duty on the Administrator to implement the section as of August 7, 1977. The defendants claim that the section becomes ambiguous when read in conjunction with other provisions of the 1977 Amendments. Since jurisdiction and the merits of this action both turn on this question of statutory construction, the Court will address the issue only insofar as necessary to show that the Administrator was acting within the realm of discretion in deciding to defer implementation.

A reading of the 1977 Amendments as a whole demonstrates that § 165 need not be made immediately effective. First, other provisions of the section outline a phased schedule for strengthening the state PSD permit requirements. The clearest example is subsection (e), which provides that pre-construction review "shall be preceded by an analysis in accordance with regulations of the Administrator," to be promulgated within six months of enactment of the Amendments. Second, in § 168(a), Congress ordered that existing PSD regulations were to remain in effect except insofar as they were "deemed amended" in three specific ways. Section 165 is not among the exceptions listed in § 168(b). EDF suggests these two sections do not conflict, since it would have been redundant to include § 165, given that its terms provide for implementation "upon enactment." This argument is weakened by the fact that § 162(a), one of the sections listed in § 168(b), provides that certain park and wilderness areas be designated Class I areas "[u]pon enactment of this part." While not in itself determinative, the inclusion of § 162(a) in § 168(b) indicates that Congress intended to make any immediate changes in PSD requirements by the method of mandating amendments to state implementation plans. Section 168(b) apparently includes all such amendments considered so crucial to the national welfare that they had to be made effective retroactive to August 7, 1977. Finally, the legislative history of the 1977 Amendments demonstrates that Congress wanted to prevent significant deterioration of clean air areas, but not at the expense of economic development. As the House Committee on Interstate and Foreign Commerce emphasized in reporting transition and other PSD sections of H.R. 6161, sections substantially similar to those adopted,

> [t]he committee went to extraordinary lengths to assure that this legislation and the time needed to develop and implement regulations would not cause current construction to be halted or clamp even a temporary moratorium on planned industrial and economic development.

H.R.Rep. No. 95–294, 95th Cong., 1st Sess. 171 (1977), U.S.Code Cong. & Admin.News 1977, p. 1077.

While helpful, this legislative history certainly did not resolve the conflict between §§ 165 and 168 to the satisfaction of the Administrator. He sought further clarification in a technical amendment, which Congress did not see fit to issue. This refusal might mean that Congress considered § 165 too clear to require explanation, as EDF contends,[14] or it might mean that § 168 is to be the controlling section. Whichever, the Administrator had to exercise his discretion to interpret the Amendments as a whole and proceed to administer them.

The Administrator publicly announced his decision to implement § 165 as of March 1, 1978, in the interrelated Federal Register notices of November 3, 1977. Whether his choice of that date, or any date preceding state revision of plans, was a proper exercise of discretion is not a subject for this Court to review.

### Conclusions

The Administrator took final discretionary action by announcing in the Federal

14. *See* statements of Sen. Edmund Muskie, 123 Cong.Rec. S. 18372 (1977).

Register that compliance with § 165(a) of the Clear Air Act would not be required retroactively to August 7, 1977. The United States Court of Appeals for the District of Columbia has exclusive jurisdiction to review this final action under § 307(b)(1) of the Act.

Since this Court lacks jurisdiction over the subject matter of this action and EDF's complaint must be dismissed, discussion of the merits of EDF's motion for preliminary injunction and the motions of the intervenors to dismiss for failure to state a claim is not required.

An appropriate Order will be issued.