**STATE OF MAINE, et al.,**
**Plaintiffs, Appellants,**

v.

**Lee M. THOMAS, etc., et al.,**
**Defendants, Appellees.**

No. 88–1983.

United States Court of Appeals,
First Circuit.

Heard Feb. 6, 1989.

Decided May 18, 1989.

As Amended June 1, 1989.

884

Gregory W. Sample, Asst. Atty. Gen., with whom James E. Tierney, Atty. Gen., State of Me., Augusta, Me., Jeffrey L. Amestoy, Atty. Gen., J. Wallace Malley, Jr., Asst. Atty. Gen., State of Vt., Montpelier, Vt., Robert Abrams, Atty. Gen., David R. Wooley, Asst. Atty. Gen., State of N.Y., Albany, N.Y., James M. Shannon, Atty. Gen., Janet G. McCabe, Asst. Atty. Gen., Boston, Mass., Com. of Mass., Cary Edwards, Atty. Gen., Paul Schneider, Deputy Atty. Gen., State of N.J., Trenton, N.J., Joseph I. Lieberman, Atty. Gen., New Haven, Conn., Brian Comerford, Asst. Atty. Gen., State of Conn., James E. O'Neil, Atty. Gen., Gary Powers, Asst. Atty. Gen., State of R.I., Providence, R.I., Howard I. Fox, Washington, D.C., Sierra Club Legal Defense Fund, James Tripp, Environmental Defense Fund, and Armond Cohen, Conservation Law Foundation of New England, were on brief for appellants.

John C. Harrison, Dept. of Justice, Washington, D.C., with whom Roger J. Marzulla, Asst. Atty. Gen., Richard S. Cohen, U.S. Atty., David C. Shilton, Dept. of Justice, Washington, D.C., and Gregory B. Foote, Office of General Counsel, E.P.A., were on brief for defendants, appellees.

Henry V. Nickel with whom Michael L. Teague, Norman W. Fichthorn, Hunton & Williams, Washington, D.C., John B. Weldon, Jr., Elizabeth Ann Rieke, and Jennings, Strouss & Salmon, Phoenix, Ariz., were on brief, for intervenors, appellees Alabama Power Co., et al.

Before SELYA, Circuit Judge, ALDRICH and COFFIN, Senior Circuit Judges.

SELYA, Circuit Judge.

The Clean Air Act, 42 U.S.C. § 7401 *et seq.* (Act), embodies one of this nation's greatest aspirations, attempting to reconcile the polity's desire for pristine air with its equally fervent desire for the benefits of life in a modern industrial economy. Congress recognized that the reconciliation of these often-conflicting desires required resources, time, and institutional commitment. Having codified the goal ("to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," 42 U.S.C. § 7401(b)(1)), Congress entrusted the mandate of the Act to the Environmental Protection Agency (EPA or the Agency).[1]

At the same time, Congress empowered the citizenry to superintend the Agency's progress toward meeting the Act's objectives by means of (i) citizen suits to compel observance of nondiscretionary duties, 42 U.S.C. § 7604(a)(2), and (ii) petitions to review final Agency action, 42 U.S.C. § 7607. The specifications which Congress set for these remedial vehicles necessitate that they be driven in different lanes; whereas citizen suits are prosecutable in federal district courts, 42 U.S.C. § 7604(a), jurisdiction over review petitions lies exclusively with the courts of appeal. As to "nationally applicable" regulations, review petitions can only be brought in the United States Court of Appeals for the District of Columbia; as to regulations of local concern, such petitions are prosecutable in other "appropriate circuit [courts]"). 42 U.S.C. § 7607(b).[2]

Unsurprisingly, this jurisdictional dichotomy has created a confused class of circumforaneous litigants, wandering perplexedly from forum to forum in search of

1. Although the Act refers to the Administrator of the EPA as nominally responsible for Agency action, 42 U.S.C. § 7602(a), we do not stand on ceremony. For the sake of simplicity, we refer to rulemaking action as that of EPA itself.

2. Because the jurisdictional interplay between these statutes is intricate, and because the core dispute in this case involves their applicability, or not, to the idiocratic situation at hand, we attach the full text of 42 U.S.C. §§ 7604, 7607 as an appendix.

remediation. In this case, seven northeastern states and several environmental groups (collectively, appellants) filed suit in the United States District Court for the District of Maine to compel EPA to promulgate regulations designed to deal with the atmospheric blight known as "regional haze." Sixty-four electric utilities and a trio of trade associations intervened as defendants. The district court ruled that it did not have jurisdiction to hear the complaint. *Maine v. Thomas,* 690 F.Supp. 1106 (D.Me.1988). We believe that the right result was reached and, although our reasoning is somewhat different, we affirm.

## I

"Regional haze" (sometimes called "uniform haze") is "widespread, regionally homogeneous haze from a multitude of sources which impairs visibility in every direction over a large area." 45 Fed.Reg. 80,084, 80,085 (1980). It may cover broad expanses, move over long distances, linger unduly, and reduce visibility in places which have few (if any) manmade emission sources. EPA's mandate to control the vexing problem of regional haze emanates directly from the Clean Air Act, which "declares as a national goal the prevention of any future, and the remedying of any existing, impairment of visibility in mandatory class I Federal areas which impairment results from manmade air pollution." 42 U.S.C. § 7491(a)(1).[3]

Congress did not leave "progress toward meeting the national goal" entirely to the Agency's discretion. 42 U.S.C. § 7491(a)(4). Quite the contrary: it charted an administrative course to guide EPA in its endeavors. The first way station relevant to this case is the August 1979 deadline requiring the Agency to "promulgate regulations to assure" that "reasonable progress" would indeed be made "toward meeting the national goal...." *Id.*

Congress' cartographical projections from that point forward were considerably less precise. But, the "reasonable progress" stipulation also referred to "compliance with the requirements of [section 7491]," *id.,* including the requirement which constitutes the second relevant way station. That pit stop was inexactly placed, requiring that state implementation plans include a "strategy for making reasonable progress toward meeting the national goal" within "ten to fifteen years." 42 U.S.C. § 7491(b)(2)(B). Construing the ten to fifteen year requirement as dating from the 1979 deadline, and not the 1977 enactment of the Act itself, the next statutory deadline would have to be met between 1989 and 1994. EPA played the laggard. It was not until after it had been sued for recalcitrance and entered a settlement and consent decree[4] that it issued regulations. *See* 45 Fed.Reg. at 80,084–95. The 1980 regulations classified air pollution impairing visibility as either plume blight ("[s]moke, dust, colored gas plumes, or layered haze ... which obscure the sky or horizon and are relatable to the single source or a small group of sources") or regional haze, *id.* at 80,085, and treated the two categories separately.

The rules and orders which EPA promulgated to control plume blight proved uncontroversial, and are not in issue in this case. As to regional haze, the rulemaking amounted to the Agency's promise to deal substantively with the matter in future rules and orders. At the time, EPA argued that technology and knowledge were not sufficiently sophisticated to allow it to monitor, model, and fully understand regional haze. 45 Fed.Reg. at 80,085–86. Accordingly, the Agency announced that "[f]uture phases [of its regulations] will extend the visibility program by addressing more complex problems such as regional haze...." *Id.* at 80,086. Appellants—and other concerned parties—grudgingly accepted the olive branch, wispy though it was. They did

---

**3.** A "Class I Federal area" is defined as an international park, a national wilderness or memorial park area which exceeds 5,000 acres, or a national park spanning more than 6,000 acres. 42 U.S.C. § 7472(a).

**4.** The consent decree was entered in the United States District Court for the District of Columbia. *See Friends of the Earth v. Costle,* No. 79–3211 (D.D.C.1979).

not ask for review of the Agency action under section 7607, but countenanced EPA's open-ended assurances rather than rush to the courthouse.

Six years elapsed without further rulemaking. Calendar pages had yellowed by the thousands, but EPA still had not produced the promised regulations. Notwithstanding the counsel of the Greek philosophers that "[h]ealing is a matter of time," Hippocrates, *Precepts,* and that "[t]ime eases all things," Sophocles, *Oedipus Rex,* in this instance the inordinate delay, understandably, rubbed salt in an open wound. Appellants' patience worn wafer-thin, they sued to compel fulfillment of the lapsed promise. Asserting that the Agency's 1980 rulemaking was not a "final action taken" under 42 U.S.C. § 7607(b),[5] appellants eschewed either an administrative filing or an attempted review petition. Instead, citing EPA's alleged disregard of what appellants characterized as a nondiscretionary duty to combat visibility impairment (embodied in 42 U.S.C. § 7491), they premised jurisdiction on 42 U.S.C. § 7604 and went directly to the district court. The reception was frosty; the court ruled that promulgation of the earlier (1980) regulations—called by the parties in interest the "Phase 1 regulations"—constituted final action, reviewable only in a court of appeals under 42 U.S.C. § 7607(b). *Maine v. Thomas,* 690 F.Supp. at 1110–12. Following dismissal of their case on jurisdictional grounds, plaintiffs appealed.

## II

The threshold question, of course, is whether EPA's 1980 promise comprised a "final action taken" for purposes of 42 U.S.C. § 7607(b). No one questions that the aspects of the Phase 1 regulations which dealt with plume blight were final in the classical sense: they brought definition to, and controlled, one facet of visibility impairment. But, the remaining aspect of the regulations—the promise to act *in futuro*—may also be a final action taken; and if so, would be subject to review only in the Court of Appeals for the District of Columbia Circuit—and then, only within 60 days of the date of the regulatory enactment. *See id.*

At this juncture, we resist the temptation to become too "abstract and conceptual," *Natural Resources Defense Council, Inc. v. Train,* 510 F.2d 692, 714 (D.C.Cir.1974), or to elevate "form over substance." *Environmental Defense Fund, Inc. v. Costle,* 448 F.Supp. 89, 93 (D.D.C.1978). We attempt instead to glean the essence of, and the rationale for, EPA's Phase 1 regulations. The result, we think, is clear: Phase 1 represented EPA's assessment of what might reasonably be done *in 1980.* Its assessment of its capacity to understand the problem of regional haze went unreviewed, as did its decision to bifurcate the visibility problem (plume blight being treated one way, regional haze another), because neither was challenged within the 60–day period provided by section 7607. As the district court correctly noted, not only were the plume blight regulations properly developed, but the decision to postpone regional haze regulations "was based on an extensive and published administrative record which reflects citizen and agency concerns, the intent to defer, and a rationale based on [the lack of adequate] technological and scientific information." *Maine v. Thomas,* 690 F.Supp. at 1111–12.[6]

■ We find no error in the district court's reading of the record in this regard.

---

5. Appellants concede that, if section 7607 applied and their remedy was by petition for review in a designated court of appeals, then section 7604 would have no pertinence, and there would be no hook upon which district court jurisdiction might be hung. Finality-based jurisdiction under section 7607 and district court jurisdiction under section 7604 are mutually exclusive. *Environmental Defense Fund, Inc. v. Costle,* 448 F.Supp. 89, 92–93 (D.D.C.1978).

6. While the district court apparently thought the existence of an adequate administrative record to be virtually decisive, we are not inclined to attach the same degree of significance to the determination. Had the district court found the record inadequate, it could have "compile[d] a record limited to reconstructing, as distinct from supporting or refuting, the agency's reasoning process." *Bethlehem Steel Corp. v. United States Envtl. Protection Agency,* 782 F.2d 645, 656 (7th Cir.1986).

Vis-a-vis regional haze, Phase 1 was a final action in the relevant sense, that is, when the regulations were promulgated in December 1980, all proper procedures had been followed for rulemaking and the resultant announcement satisfied (albeit 18 months after the statutory deadline) the requirement for making "reasonable progress toward meeting the national goal...." 42 U.S.C. § 7491(a)(4). While "reasonable progress" is not the only, or even the definitive, test for finality, it is an excellent proxy. Furthermore, we deem it open to take the inaction of appellants, and others, in the 60 days after Phase 1 was promulgated as an informal confirmation that EPA's action was final. Bluntly put, if any citizen felt that EPA's promise (1) masked its capacity to take action, (2) would serve as grounds for future delay, or (3) simply left the regulatory pace too unsure, that was the time to challenge Phase 1, in part or in whole. We are more than a little skeptical that veterans of the legal skirmishes which have regularly marked the development of the American administrative apparatus would have placed absolute faith in the goodwill of any agency regularly named by them as a defendant. Promissory or not, the 1980 disposition of the regional haze problem met the statutory test for regulatory action and could have been challenged within 60 days of promulgation had any citizen felt that Phase 1 failed to observe the statutory mandate.

Especially significant, and in our view controlling, is that Phase 1 made a "change in the status quo itself ...," thus rendering the regulation ripe for review. *Roosevelt Campobello Int'l Park Comm'n v. United States Envtl. Protection Agency*, 684 F.2d 1034, 1040 (1st Cir.1982). A challenge to Phase 1 would neither have forced a court to entangle itself "in abstract disagreement over administrative policies ...," nor have subjected EPA to "judicial interference [before] an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). While the plume blight regula-

tions are paradigmatic examples of an order ripe for review, the temporizing "promise" anent uniform haze, given the congressional mandate and the state of the art, was a bit greener at the edges—but also ripe.

We also take cognizance that at the time Phase 1 was promulgated, Congress and the courts had acted in ways suggestive, explicitly and implicitly, that a decision to postpone action constituted a final action for purposes of 42 U.S.C. § 7607. For instance, Congress amended the Clean Air Act in 1977 to add the words "final action" to 42 U.S.C. § 7607. It did so to clarify "whether there could be concurrent jurisdiction in the court of appeals and the district court when the Administrator had acted, though allegedly not far enough, in a way which constituted a refusal to perform a mandatory duty." *Environmental Defense Fund*, 448 F.Supp. at 92. In that case, EPA postponed implementing certain regulations developed under amendments to the Act, regulations which had emerged after appropriate administrative proceedings. *Id.* at 93. The court emphasized the breadth of the "final action" taxonomy. *Id.* at 92. Having determined that EPA gave the public adequate notice that the deferral was a final action because "in the preamble the Administrator clearly states and explains his decision to defer ...," *id.* at 93, the court held that "the Administrator had taken a final action as to the issue of whether § 165 [of the Act] was to be immediately effective." *Id.*

This case involves far fewer ambiguities than *Environmental Defense Fund*. There, EPA set out the deferral and explanation in the regulatory preamble, a dubious method at best. *Id.* at 93 & n. 11. Here, EPA announced Phase 1 as a regulatory scheme, fully explained and defended in the text setting out the regulations. Furthermore, the administrative proceedings had directly addressed the possibility that regional haze rules and orders might be delayed. To mince no words, the decision to defer constituted a fully developed part of the final action taken on the statutory mandate. Indeed, it is no exaggera-

tion to say that EPA announced this final action—the phased approach—as its response to Congress' command. Because a final action need not consist solely of standard rules or orders, we agree "that EPA intended to limit the [1980] regulations to plume blight." *Vermont v. Thomas*, 850 F.2d 99, 103 (2d Cir.1988). Nonetheless, the final action taken has legal effect and establishes procedural requirements, such as substantive conditions and consequent deadlines, for establishing future phases.

■ There is a second furculum to the threshold question, but it points in the same direction. Appellants argue not only that the Court of Appeals for the District of Columbia Circuit *lacked* jurisdiction (because EPA's "promise" was not a "final action"), but that the district court *possessed* jurisdiction (because the statute imposed a nondiscretionary duty on the Agency immediately to regulate visibility-impairing pollution, which duty was ignored). In this case, these arguments are necessary corollaries of each other—so it is unsurprising that the imagined duty did not exist in the stated terms. The statute merely imposed a requirement to regulate for "reasonable progress" and in "compliance with the requirements of this section." 42 U.S. C. § 7491(a)(4). The "requirements" included "a long-term (ten to fifteen years) strategy for making reasonable progress toward meeting the national goal...." 42 U.S.C. § 7491(b)(2)(B). The organic statute thus required regulatory provisions embodying a combination of actual rules and orders and a plan for implementing future rules and orders. The 1980 regulations, covering plume blight completely and announcing a plan of study and a promise of future rules and orders to deal with regional haze, albeit bereft of details, complied fully with EPA's nondiscretionary duty to take regulatory action.

To be sure, appellants argue that a nondiscretionary duty must contain an element whereby a court, or other reviewing authority, may test whether the duty has been fulfilled. As we have noted, that element is encompassed only in part in the substantive action required of EPA. Having discerned who was required to take what action, we believe that the appropriate check is to ask when the duty must be fulfilled. Our belief is apparently shared by the District of Columbia Circuit: "Although a date-certain deadline ... may or may not be nondiscretionary, it is highly improbable that a deadline will be nondiscretionary, i.e. clear-cut, if it exists only by reason of an inference drawn from the overall statutory framework." *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir.1987). If we return for a moment to the organic statute, we note that between the initial 1979 deadline, 42 U.S.C. § 7491(a)(4), and the next (1989–94) deadline, 42 U.S.C. § 7491(b)(2)(B), no other deadlines exist (and the 1989–94 deadline is only one for a "strategy," not for meeting the national goal itself). In short, by 1979 EPA was to have announced a plan of progress that would have its impact upon the states' implementation plans by the end of the 1989–94 time frame. While the second deadline looms near, the first has long since passed. No interim nondiscretionary duties exist. Accordingly, the district court lacked subject matter jurisdiction.[7]

### III

We consider two other lines of attack which appellants doggedly pursue.

■ First, they argue that the Phase 1 regulations, insofar as they affect regional haze, were essentially unreviewable, ergo, those regulations could not be tantamount to final action. Appellants are wrong. If challenged, the premises for postponed reg-

---

7. This is not a case of "[r]ecalcitrance in the face of duty." *Sierra Club*, 828 F.2d at 793–94. EPA fulfilled its *statutory* duty here; its recalcitrance, if any, lies not in its failure to meet a deadline imposed by Congress, but rather in a failure to meet self-imposed *regulatory* deadlines, premised on event-specific and technologi-

cal happenings, regulatory deadlines which the Agency created in the course of meeting the statutory deadline. Such regulatory duties are perhaps nondiscretionary, but they are not *statutory* nondiscretionary duties; hence, they are not proper grist for the section 7604 mill.

ulation could well have been reviewed by the District of Columbia Circuit.

EPA asserted, after all, scientific and technological incapacity, and did so not only after fulfilling the requirements of its regulatory apparatus but also in response to a settlement agreement. *See supra* at 885 & note 4. Surely a court could have assessed whether the record adequately supported EPA's decisions and decided whether the promise of future regulation adequately harmonized with the Agency's nondiscretionary duty to progress toward the national goal. Such a challenge would have presented claims against a backdrop "sufficiently concrete to allow for focus and intelligent analysis ...," and would not have forced the court to decide "issues unnecessarily, wasting time and effort." *Roosevelt Campobello*, 684 F.2d at 1040.

The flip side of the coin betokens the same result. EPA could hardly have regarded review in 1980 as "premature," because it made its promise precisely in order "to refine, revise [and] clarify the particular ... matter at issue ... thus creating a consensus among the parties [and] avoiding the need for court proceedings." *Id.* We would fashion a perverse paradox were we to posit that a promise which arose out of wrangling in court, a promise made in order to avoid more such wrangling, a promise which actually represented the consensus of litigant-adversaries, was not a final administrative action and therefore not subject to review. For, if it were not subject to review, then it would in turn simply spawn more section 7604 actions, each resolvable, ultimately, by an unreviewable promise. Even Kafka would have found it difficult to devise a more twisted antilogy.

■ The other proposition advanced by appellants is that Congress could not have intended persons confronted by a governmental promise of some future action to rush headlong to a federal court, or else forever hold their peace. The sovereign's word, they contend, should be its bond; and if its word proves to be mendacious, then reliant citizens should not be left holding an empty bag. The asseveration has a certain appeal—but the claim of massive inequity cannot withstand scrutiny. Appellants, even at this late date, are not remediless. While the district court lacks jurisdiction, and a frontal challenge in the court of appeals is no longer timely, compliance with the promise can be enforced.

EPA remains under a double-barreled duty, statutory and self-imposed under the terms of the promised (phased) rulemaking, 45 Fed.Reg. at 80,084–86, to deal with regional haze. By failing to contest the Agency's assurance when given, appellants to some extent left the timetable in EPA's own hands. But, appellants retain an entitlement to petition EPA for action "based solely on grounds arising after ..." the time for challenging the 1980 promise had expired. 42 U.S.C. § 7607(b)(1). If EPA refuses to act on the new grounds, appellants may yet obtain judicial review before the District of Columbia Circuit if they choose to follow the entrenched precedent which precisely details the steps to be taken in order to compel the Agency to revise, and thereby fulfill, Phase 1. Let us explain.

In announcing Phase 1, EPA restricted its own discretion. The regulation describing "future phases" was phrased in mandatory, not discretionary, terms:

> We *will* propose and promulgate future phases when improvement in monitoring techniques provides more data on source-specific levels of visibility impairment, regional scale models become refined, and our scientific knowledge about relationships between emitted air pollutants and visibility impairment improves.

45 Fed.Reg. at 80,086 (emphasis supplied). We agree with the Second Circuit that the mandatory language neither allows nor compels the states to develop implementation plans "for the evolution of long-term strategies combating regional haze." *Vermont v. Thomas*, 850 F.2d at 103. The effect of the language on EPA, however, is quite another matter.

The Clean Air Act specifically provides that its rulemaking provisions shall apply to "revision of regulations ... relating to prevention of significant deterioration of air quality and protection of visibility[.]"

42 U.S.C. § 7607(d)(1)(I).[8] Without fully recapitulating the exhaustive study of legislative history undertaken by the District of Columbia Circuit, we simply note our agreement in the conclusion that Congress intended citizens to have an ability to confront EPA with new information arguably sufficient to merit revision of extant regulations. *See Group Against Smog & Pollution, Inc. v. United States Envtl. Protection Agency*, 665 F.2d 1284, 1289–90 (D.C.Cir.1981). We approve the procedures suggested by the Agency and "explicitly endorsed" by our sister circuit:

> (1) The person seeking revision of a standard of performance, or any other standard reviewable under § 307, should petition EPA to revise the standard in question. The petition should be submitted together with supporting materials, or references to supporting materials.
>
> (2) EPA should respond to the petition and if it denies the petition, set forth its reasons.
>
> (3) If the petition is denied, the petitioner may seek review of the denial in [the D.C. Circuit] pursuant to § 307.

*Id.* at 1290 (footnote omitted); *see also Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654, 666 (D.C.Cir.1975); *Union Electric Co. v. Environmental Protection Agency*, 515 F.2d 206, 220 (8th Cir.1975), *aff'd*, 427 U.S. 246, 96 S.Ct. 2518, 49 L.Ed. 2d 474 (1976).

Here, EPA bound itself to "propose and promulgate future phases" anent uniform haze when improved monitoring techniques yield data, when models become refined, and when scientific knowledge improves.

45 Fed.Reg. at 80,086. If appellants have collected evidence sufficient to demonstrate that those conditions are now satisfied, they need only petition EPA to trigger new rulemaking. So long as the evidence suffices, the Agency—given the phrasing of the Phase 1 regulations—could reject such a petition only if it rescinded those aspects of Phase 1 binding it to rulemaking based on a limited set of factors. (Any such rescission, of course, would require implementation of a full and appropriate rulemaking procedure.)

■ Though the question of the binding force of regulations and procedures [9] on the promulgating agency has never arisen under the Clean Air Act to our knowledge, we find that question to be easily answerable by analogous precedent. EPA's very claim that Phase 1 was final when issued, and thus possessed a stipulated jurisdictional effect, is equivalent to a claim *sotto vocce* that Phase 1 from the outset had the force of law, affecting the rights of citizens to enforce statutory duties. And it is settled that:

> Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where internal procedures are possibly more rigorous than otherwise would be required.

*Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974) (citations omitted) (discussing self-imposed procedures of Board of Immigration Appeals). Other examples are legion. *See, e.g., Unit-*

---

**8.** The district court did, at one point, indicate that a petition for rulemaking under the Administrative Procedure Act (APA), specifically 5 U.S.C. § 553(e), might lie. *See Maine v. Thomas*, 690 F.Supp. at 1111 n. 19. Although we agree that a petition for rulemaking may be a proper antidote for the ailment which grips appellants presently, the district court was wrong in suggesting that the APA would apply. The Clean Air Act is generally a self-contained statute and all relevant rulemaking must be conducted according to the procedures which the Act prescribes. *See* 42 U.S.C. § 7607(d)(1); *see also* 42 U.S.C. § 7607(c) (Clean Air Act's review procedure is exclusive). In those few instances when the APA is relevant to rulemaking under the Clean Air Act, its procedures are specifically

adopted by reference, *e.g.*, 42 U.S.C. § 7607(d)(3) (setting out notice procedure by reference to APA).

**9.** We need not trifle with semantics. Whether EPA's promise to act constituted a regulation or a procedure is, in this instance, of no moment. Under either rubric, the promise had the force of law and, because the mandatory language removed any discretion (EPA must act when certain conditions take place), the cognomen which we append to the promise is immaterial. Formalistic labeling plays no legitimate part in analyzing actual rights and duties under the Act. *See, e.g., Environmental Defense Fund*, 448 F.Supp. at 93.

ed States v. Nixon, 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3101–02, 41 L.Ed.2d 1039 (1974) (agency may "den[y] [it]self the authority to exercise the discretion delegated ... and ... could reassert it by amending the regulations"); *Kelly v. Railroad Retirement Bd.,* 625 F.2d 486, 492, 491–92 (3d Cir.1980) ("Failure to comply with its regulations renders the agency's act null."); *North Georgia Bldg. & Constr. Trades Council v. Goldschmidt,* 621 F.2d 697, 710 (5th Cir.1980); *Mead Data Cent., Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 258 (D.C.Cir.1977); *Doraiswamy v. Secretary of Labor,* 555 F.2d 832, 843 (D.C. Cir.1976); *Cruz–Casado v. United States,* 553 F.2d 672, 675, 213 Ct.Cl. 498 (1977); *Nader v. Nuclear Regulatory Comm'n,* 513 F.2d 1045, 1051 (D.C.Cir.1975); *Schatten v. United States,* 419 F.2d 187, 191 (6th Cir.1969); *Pacific Molasses Co. v. Federal Trade Comm'n,* 356 F.2d 386, 389–90 (5th Cir.1966); *Elmo Div. of Drive–X Co. v. Dixon,* 348 F.2d 342, 346 n. 5 (D.C.Cir.1965) (per curiam).

EPA has, in a final action, met the mandatory burden of 42 U.S.C. § 7491(g)(1) that "[i]n determining reasonable progress there shall be taken into consideration the costs of compliance, the time necessary for compliance, and the energy and nonair quality environmental impacts of compliance, and the remaining useful life of any existing source subject to such requirements[.]" In the process, the Agency committed itself to promulgating new regulatory phases based on a certain set of condi-

tions. The content of those phases may well be affected by the requirements of section 7491(g)(1), but EPA, in light of its earlier promise, cannot now reject a rulemaking petition on such grounds. For that reason, appellants' portrayal of the inequities of their plight strikes us as overblown.

### IV

We summarize our journey through the labyrinth. EPA's actions in 1980 represented a rulemaking consensus that it could deal substantively with plume blight but not with regional haze. The Phase 1 regulations, though entirely promissory in respect to regional haze, nevertheless amounted to "final action taken" within the ambit of 42 U.S.C. § 7607(b)(1). It necessarily follows that no citizen suit lies under 42 U.S.C. § 7604, and that appellants incorrectly attempted to invoke the jurisdiction of the district court in their challenge to the lengthy period of dormancy which followed EPA's announcement of the Phase 1 regulations. Although we believe that there is a route whereby citizens may require EPA to act on self-imposed duties when self-imposed conditions have been met, *see supra* Part III, that route does not pass through the district court.

We need go no further. Because plaintiffs' present peregrinations have wandered far from the proper path, the district court's dismissal of the action for want of subject matter jurisdiction must be

*Affirmed.*

APPENDIX A

## § 7604. Citizen suits

### (a) Authority to bring civil action; jurisdiction

Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator, or

(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment) or who is alleged to be in violation of any condition of such permit.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be.

### (b) Notice

No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.[1]

(2) under subsection (a)(2) of this section prior to 60 days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of section 7412(c)(1)(B) of this title or an order issued by the Administrator pursuant to section 7413(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

#### (c) Venue; Intervention by Administrator

**(1)** Any action respecting a violation by a stationary source of an emission standard or limitation or an order respecting such standard or limitation may be brought only in the judicial district in which such source is located.

**(2)** In such action under this section, the Administrator, if not a party, may intervene as a matter of right.

#### (d) Award of costs; security

The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure.

#### (e) Nonrestriction of other rights

Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency). Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from—

    **(1)** bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court, or

    **(2)** bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality,

against the United States, any department, agency, or instrumentality thereof, or any officer, agent, or employee thereof under State or local law respecting control and abatement of air pollution. For provisions requiring compliance by the United States, departments, agencies, instrumentalities, officers, agents, and employees in the same manner as nongovernmental entities, see section 7418 of this title.

#### (f) Definition

For purposes of this section, the term "emission standard or limitation under this chapter" means—

    **(1)** a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,

    **(2)** a control or prohibition respecting a motor vehicle fuel or fuel additive, or

    **(3)** any condition or requirement of a permit under part C of subchapter I of this chapter (relating to significant deterioration of air

quality) or part D of subchapter I of this chapter (relating to nonattainment), any condition or requirement of section 7413(d) of this title (relating to certain enforcement orders), section 7419 of this title (relating to primary nonferrous smelter orders), any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements, section 7545(e) and (f) of this title (relating to fuels and fuel additives), section 7491 of this title (relating to visibility protection), any condition or requirement under part B of subchapter I of this chapter (relating to ozone protection), or any requirement under section 7411 or 7412 of this title (without regard to whether such requirement is expressed as an emission standard or otherwise).[1]

which is in effect under this chapter (including a requirement applicable by reason of section 7418 of this title) or under an applicable implementation plan.

(July 14, 1955, c. 360, Title III, § 304, as added Dec. 31, 1970, Pub.L. 91–604, § 12(a), 84 Stat. 1706, and amended Aug. 7, 1977, Pub.L. 95–95, Title III, § 303(a)–(c), 91 Stat. 771, 772; Nov. 16, 1977, Pub.L. 95–190, § 14(a)(77), (78), 91 Stat. 1404.)

[1] So in original.  Probably should be a comma.

## § 7607.  Administrative proceedings and judicial review

### (a) Administrative subpenas; confidentiality; witnesses

(1) [1] In connection with any determination under section 7410(f) or section 7521(b)(5) of this title, or for purposes of obtaining information under section 7521(b)(4) or 7545(c)(3) of this title, the Administrator may issue subpenas for the attendance and testimony of witnesses and the production of relevant papers, books, and documents, and he may administer oaths. Except for emission data, upon a showing satisfactory to the Administrator by such owner or operator that such papers, books, documents, or information or particular part thereof, if made public, would divulge trade secrets or secret processes of such owner or operator, the Administrator shall consider such record, report, or information or particular portion thereof confidential in accordance with the purposes of section 1905 of Title 18, except that such paper, book, document, or information may be disclosed to other officers, employees, or authorized representatives of the United States concerned with carrying out this chapter, to persons carrying out the National Academy of Sciences' study and investigation provided for in section 7521(c) of this title, or when relevant in any proceeding under this chapter.  Witnesses summoned shall be paid the same fees and mileage that are paid witnesses in the courts of the United States.  In case of contumacy or refusal to obey a subpena served upon any person under this subparagraph, the district court of the United States for any district in which such person is found or resides or transacts business, upon application by the United States and after notice to such person, shall have jurisdiction to issue an order requiring such person to appear and give testimony before the Administrator to appear and produce papers, books, and documents before the Administrator, or both, and any failure to obey such order of the court may be punished by such court as a contempt thereof.

### (b) Judicial review

(1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard or requirement under section 7412 of this title, any standard of performance or requirement under section 7411 of this title, any standard under section 7521 of this title (other than a standard required to be prescribed under section 7521(b)(1) of this title), any determination under section 7521(b)(5) of this title, any control or prohibition under section 7545 of this title, any standard under section 7571 of this title, any rule issued under section 7413, 7419, or under section 7420 of this title, or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia.  A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title or section 7411(d) of this title, any order under section 7411(j) of this title, under section 7412(c) of this title, under section 7413(d) of this title, under section 7419 of this title, or under section 7420 of this title, or his action under section 1857c–10(c)(2)(A), (B), or (C) of this title (as in effect before August 7, 1977) or under regulations thereunder, or

any other final action of the Administrator under this chapter (including any denial or disapproval by the Administrator under subchapter I of this chapter) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination. Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register, except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise.

(2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.

### (c) Additional evidence

In any judicial proceeding in which review is sought of a determination under this chapter required to be made on the record after notice and opportunity for hearing, if any party applies to the court for leave to adduce additional evidence, and shows to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Administrator, the court may order such additional evidence (and evidence in rebuttal thereof) to be taken before the Administrator, in such manner and upon such terms and conditions as to [2] the court may deem proper. The Administrator may modify his findings as to the facts, or make new findings, by reason of the additional evidence so taken and he shall file such modified or new findings, and his recommendation, if any, for the modification or setting aside of his original determination, with the return of such additional evidence.

### (d) Rulemaking

(1) This subsection applies to—

(A) the promulgation or revision of any national ambient air quality standard under section 7409 of this title,

(B) the promulgation or revision of an implementation plan by the Administrator under section 7410(c) of this title,

(C) the promulgation or revision of any standard of performance under section 7411 of this title or emission standard under section 7412 of this title,

(D) the promulgation or revision of any regulation pertaining to any fuel or fuel additive under section 7545 of this title,

(E) the promulgation or revision of any aircraft emission standard under section 7571 of this title,

(F) promulgation or revision of regulations pertaining to orders for coal conversion under section 7413(d)(5) of this title (but not including orders granting or denying any such orders),

(G) promulgation or revision of regulations pertaining to primary nonferrous smelter orders under section 7419 of this title (but not including the granting or denying of any such order),

(H) promulgation or revision of regulations under part B of subchapter I of this chapter (relating to stratosphere and ozone protection),

(I) promulgation or revision of regulations under part C of subchapter I of this chapter (relating to prevention of significant deterioration of air quality and protection of visibility),

(J) promulgation or revision of regulations under section 7521 of this title and test procedures for new motor vehicles or engines under section 7525 of this title, and the revision of a standard under section 7521(a)(3) of this title,

(K) promulgation or revision of regulations for noncompliance penalties under section 7420 of this title,

(L) promulgation or revision of any regulations promulgated under section 7541 of this title (relating to warranties and compliance by vehicles in actual use),

(M) action of the Administrator under section 7426 of this title (relating to interstate pollution abatement), and

(N) such other actions as the Administrator may determine.

The provisions of section 553 through 557 and section 706 of Title 5 shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies. This subsection shall not apply in the case of any rule or circumstance referred to in subparagraphs (A) or (B) of subsection 553 (b) of Title 5.

(2) Not later than the date of proposal of any action to which this subsection applies, the Administrator shall establish a rulemaking docket for such action (hereinafter in this subsection referred to as a "rule"). Whenever a rule applies only within a particular State, a second (identical) docket shall be simultaneously established in the appropriate regional office of the Environmental Protection Agency.

(3) In the case of any rule to which this subsection applies, notice of proposed rulemaking shall be published in the Federal Register, as provided under section 553(b) of Title 5, shall be accompanied by a statement of its basis and purpose and shall specify the period available for public comment (hereinafter referred to as the "comment period"). The notice of proposed rulemaking shall also state the docket number, the location or locations of the docket, and the times it will be open to public inspection. The statement of basis and purpose shall include a summary of—

(A) the factual data on which the proposed rule is based;

(B) the methodology used in obtaining the data and in analyzing the data; and

(C) the major legal interpretations and policy considerations underlying the proposed rule.

The statement shall also set forth or summarize and provide a reference to any pertinent findings, recommendations, and comments by the Scientific Review Committee established under section 7409(d) of this title and the National Academy of Sciences, and, if the proposal differs in any important respect from any of these recommendations, an explanation of the reasons for such differences. All data, information, and documents referred to in this paragraph on which the proposed rule relies shall be included in the docket on the date of publication of the proposed rule.

(4)(A) The rulemaking docket required under paragraph (2) shall be open for inspection by the public at reasonable times specified in the notice of proposed rulemaking. Any person may copy documents contained in the docket. The Administrator shall provide copying facilities which may be used at the expense of the person seeking copies, but the Administrator may waive or reduce such expenses in such instances as the public interest requires. Any person may request copies by mail if the person pays the expenses, including personnel costs to do the copying.

(B)(i) Promptly upon receipt by the agency, all written comments and documentary information on the proposed rule received from any person for inclusion in the docket during the comment period shall be placed in the docket. The transcript of public hearings, if any, on the proposed rule shall also be included in the docket promptly upon receipt from the person who transcribed such hearings. All documents which become available after the proposed rule has been published and which the Administrator determines are of central relevance to the rulemaking shall be placed in the docket as soon as possible after their availability.

(ii) The drafts of proposed rules submitted by the Administrator to the Office of Management and Budget for any interagency review process prior to proposal of any such rule, all documents accompanying such drafts, and all written comments thereon by other agencies and all written responses to such written comments by the Administrator shall be placed in the docket no later than the date of proposal of the rule. The drafts of the final rule submitted for such review process prior to promulgation and all such written comments thereon, all documents accompanying such drafts, and written responses thereto shall be placed in the docket no later than the date of promulgation. ,

(5) In promulgating a rule to which this subsection applies (i) the Administrator shall allow any person to submit written comments, data, or documentary information; (ii) the Administrator shall give interested persons an opportunity for the oral presentation of data, views, or arguments, in addition to an opportunity to make written submissions; (iii) a transcript shall be kept of any oral presentation; and (iv) the Administrator shall keep the record of such proceeding open for thirty days after completion of the proceeding to provide an opportunity for submission of rebuttal and supplementary information.

(6)(A) The promulgated rule shall be accompanied by (i) a statement of basis and purpose like that referred to in paragraph (3) with respect to a proposed rule and (ii) an explanation of the reasons for any major changes in the promulgated rule from the proposed rule.

(B) The promulgated rule shall also be accompanied by a response to each of the significant comments, criticisms, and new data submitted in written or oral presentations during the comment period.

(C) The promulgated rule may not be based (in part or whole) on any information or data which has not been placed in the docket as of the date of such promulgation.

(7)(A) The record for judicial review shall consist exclusively of the material referred to in paragraph (3), clause (i) of paragraph (4)(B), and subparagraphs (A) and (B) of paragraph (6).

(B) Only an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment (including any public hearing) may be raised during judicial review. If the person raising an objection can demonstrate to the Administrator that it was impracticable to raise such objection within such time or if the grounds for such objection arose after the period for public comment (but within the time specified for judicial review) and if such objection is of central relevance to the outcome of the rule, the Administrator shall convene a proceeding for reconsideration of the rule and provide the same procedural rights as would have been afforded had the information been available at the time the rule was proposed. If the Administrator refuses to convene such a proceeding, such person may seek review of such refusal in the United States court of appeals for the appropriate circuit (as provided in subsection (b) of this section). Such reconsideration shall not postpone the effectiveness of the rule. The effectiveness of the rule may be stayed during such reconsideration, however, by the Administrator or the court for a period not to exceed three months.

(8) The sole forum for challenging procedural determinations made by the Administrator under this subsection shall be in the United States court of appeals for the appropriate circuit (as provided in subsection (b) of this section) at the time of the substantive review of the rule. No interlocutory appeals shall be permitted with respect to such procedural determinations. In reviewing alleged procedural errors, the court may invalidate the rule only if the errors were so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made.

(9) In the case of review of any action of the Administrator to which this subsection applies, the court may reverse any such action found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or

(D) without observance of procedure required by law, if (i) such failure to observe such procedure is arbitrary or capricious, (ii) the requirement of paragraph (7)(B) has been met, and (iii) the condition of the last sentence of paragraph (8) is met.

(10) Each statutory deadline for promulgation of rules to which this subsection applies which requires promulgation less than six months after date of proposal may be extended to not more than six months after date of proposal by the Administrator upon a determination that such extension is necessary to afford the public, and the agency, adequate opportunity to carry out the purposes of this subsection.

(11) The requirements of this subsection shall take effect with respect to any rule the proposal of which occurs after ninety days after August 7, 1977.

#### (e) Other methods of judicial review not authorized

Nothing in this chapter shall be construed to authorize judicial review of regulations or orders of the Administrator under this chapter, except as provided in this section.

#### (f) Costs

In any judicial proceeding under this section, the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate.

#### (g) Stay, injunction, or similar relief in proceedings relating to noncompliance penalties

In any action respecting the promulgation of regulations under section 7420 of this title or the administration or enforcement of section 7420 of this title no court shall grant any stay, injunctive, or similar relief before final judgment by such court in such action.

(July 14, 1955, c. 360, Title III, § 307, as added Dec. 31, 1970, Pub.L. 91–604, § 12(a), 84 Stat. 1707, and amended Nov. 18, 1971, Pub.L. 92–157, Title III, § 302(a), 85 Stat. 464; June 22, 1974, Pub.L. 93–319, § 6(c), 88 Stat. 259; Aug. 7, 1977, Pub.L. 95–95, Title III, §§ 303(d), 305(a), (c), (f)–(h), 91 Stat. 772, 776, 777; Nov. 16, 1977, Pub.L. 95–190, § 14(a)(79), (80), 91 Stat. 1404.)

[1] So in original. Subsec. (a) enacted without a par. (2).

[2] So in original. The word "to" probably should not appear.